IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

OTIS E. HILL,                        )
                                     )
            Plaintiff,               )
                                     )
    v.                               )        1:11CV462
                                     )
SOUTHEASTERN FREIGHT                 )
LINES, INC.,                         )
                                     )
            Defendant.               )

MEMORANDUM OPINION

Beaty, Chief Judge.

This matter is before the Court on a Motion for Summary Judgment [Doc. #13] filed by

Defendant Southeastern Freight Lines, Inc. ("Defendant" or "SEFL") as to Plaintiff Otis E.

Hill's ("Plaintiff" or "Mr. Hill") claims of discrimination on the basis of age, disability, and

retaliation.  Also before the Court, is Defendant's Motion to Strike Portions of Plaintiff's

Summary Judgment Evidence [Doc. #17].  For the reasons set forth below, Defendant's Motion

to Strike will be GRANTED IN PART and DENIED IN PART, and Defendant's Motion for

Summary Judgment will be GRANTED.  Accordingly, this case will be DISMISSED with

prejudice.

I.      FACTUAL AND PROCEDURAL BACKGROUND

        Plaintiff is a citizen of Greensboro, North Carolina.  SEFL is a South Carolina

corporation with its principal place of business in Lexington, South Carolina.  In approximately

March 1982, Plaintiff began working at SEFL's Greensboro, North Carolina, location as a part-

time dock worker.  By 1983, Plaintiff's primary duty became that of a full-time pick-up and

delivery driver ("P&D Driver"). As a P&D Driver, Plaintiff's responsibility was to "[p]ick up freight and deliver freight." (Dep. of Otis E. Hill [Doc. #13-1], at 24). However, since being employed as a P&D Driver, Plaintiff has been asked consistently to improve on his performance. (Dep. of Otis E. Hill [Doc. #13-1], at 59-60).

SEFL measures the productivity of its P&D Drivers by using a proprietary formula that takes into account a driver's cargo, as well as the distance driven, the number of stops, and other objective criteria. (Decl. of Marty Coleman [Doc. #13-3], at 1-2; Dep. of Otis E. Hill [Doc. #13-1], at 38). A driver's performance number is "kept on a daily basis through a Daily Pickup and Delivery report." (Decl. of Marty Coleman [Doc. #13-3], at 2; Dep. of Otis E. Hill [Doc. #13-1], at 38). SEFL personnel rely on the driver-performance number to gauge how well drivers are performing. (Dep. of Otis E. Hill [Doc. #13-1], at 44-45). SEFL has relied on this productivity measurement system for at least the last 20 years. (Id. at 45). With respect to performance evaluations for P&D Drivers at SEFL, there are cargo loads that, by their nature, result in lower performance numbers, while there are cargo loads that provide an opportunity for P&D Drivers to score higher performance numbers. (Dep. of Otis E. Hill [Doc. #13-1], at 88-89; Decl. of Marty Coleman [Doc. #13-3], at 2). The experience of having a good or bad load for performance purposes was shared by everyone who was a P&D Driver at SEFL. (Dep. of Otis E. Hill [Doc. #13-1], at 89).

Since 2007, Plaintiff has received a number of written corrective actions regarding his job performance. Specifically, in 2007, Plaintiff received corrective actions for: (1) excessive driving/stop times to and from customers and around his lunch break; and (2) failing to fuel his

tractor.  (Dep. of Otis E. Hill [Doc. 13-1], Ex. 3, at 13-14).  In 2008, Plaintiff received corrective actions for: (1) exceeding the maximum number of hours permissible during a work day; (2) excessive driving times to his stops; and (3) failing to approach a job assignment with a positive attitude.  (Id. at 10-12.)  In 2009, Plaintiff's corrective actions were in relation to: (1) consistently excessive drive/stop times; (2) low daily driver performance levels; (3) a preventable accident; and (4) failing to take his hand truck and load lock with him on two runs in violation of SEFL company policy.  (Id. at 5-9).  Additionally, in 2009, Plaintiff received a final action warning regarding "unsatisfactory job performance."  (Id. at 6).  In 2010, Plaintiff received corrective actions for: (1) making an incorrect delivery to Home Depot; and (2) leaving his "trailer chock" in the wrong location.  (Id. at 1-4).  On March 3, 2010, Plaintiff received a final action warning for "unacceptable performance", which indicated that "[a]ny future violation of company policy, practices, safety rules or guidelines will result in additional disciplinary action, which will include termination of your employment."  (Id. at 1).

On May 10, 2010, Marty Coleman ("Mr. Coleman"), the service center manager for SEFL's Greensboro location, "received word that Mr. Hill had been slow on his runs and that [a] customer, Walter Kidde, had complained that Mr. Hill had not arrived in time to do a pickup." (Decl. of Marty Coleman [Doc. #13-3], at 3).  Mr. Hill contends that he did nothing wrong on this occasion because he had operated according to his usual delivery schedule. Specifically, Mr. Hill contends that he had no knowledge of the urgency with which he needed to get to Walter Kidde because he had not been told that Walter Kidde requested an 8:00 a.m. pickup.  (Aff. of Otis E. Hill [Doc. #15-3], at 8).  Two days later, on May 12, 2010, Mr.

3

Coleman, suspended Mr. Hill while SEFL personnel "determined what would be done regarding his employment." (Decl. of Marty Coleman [Doc. #13-3], at 3). SEFL determined that it would offer Mr. Hill a linehaul position that would require him to drive at night "from point A to point B with no deliveries or pickups." (Id. at 3-4). Mr. Coleman explained that if Mr. Hill was unwilling to accept the linehaul position, "SEFL would consider it a voluntary resignation." (Id. at 4; Dep. of Otis E. Hill [Doc. #13-1], at 110). Mr. Hill later provided Mr. Coleman with two doctors' statements indicating that it "wouldn't be advisable or safe for [Mr. Hill] to drive all night with [his] vision problem." (Dep. of Otis E. Hill [Doc. #13-1], at 111-12). Specifically, a statement by Dr. Robert Groat indicated that Mr. Hill's eye conditions made it difficult for him to see at night, and that "it would be beneficial for him not to drive after dark." (Id., Ex. 5). Another statement, by Dr. David Keller, indicated that Mr. Hill was "[u]nable to drive at night due to an eye problem." (Id., Ex. 6). Mr. Hill, therefore, told Mr. Coleman that he would not accept the linehaul position because it would require him to drive all night, which, based on the statements from his doctors, would not be advisable due to his glaucoma. (Id., at 111-12, 121). Additionally, Mr. Hill refused to resign. Shortly thereafter, on June 3, 2010, SEFL terminated Mr. Hill's employment. (Decl. of Marty Coleman [Doc. # 13-3], at 5).

On or about May 5, 2011, Plaintiff filed this civil action in Guilford County Superior Court, alleging that his termination was the result of age discrimination, disability discrimination and retaliation. On June 10, 2011, this case was removed to the United States District Court for the Middle District of North Carolina. Plaintiff specifically contends that he "well and truly performed all of the duties assigned him, abided by all instructions and orders he received from

his managers and supervisors . . . and in general was an excellent employee." (Compl. ¶ 4). Additionally, Plaintiff contends that his dismissal was on account of Defendant's intent to discriminate against him on the basis of his age and disability, as well as in retaliation for Plaintiff's charge of discrimination that he filed with the Equal Employment Opportunity Commission ("EEOC") prior to being terminated.

On March 19, 2012, Defendant filed the present Motion for Summary Judgment, contending that the material facts in this case are not in dispute and that Plaintiff cannot establish a prima facie case of age discrimination, disability discrimination, or retaliation. The Court notes that Plaintiff has conceded that he cannot prove his retaliation claim. (Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. [Doc. #15], at 1). Therefore, the only remaining claims before the Court on Defendant's Motion for Summary Judgment are Plaintiff's age and disability discrimination claims. The Defendant has also filed a Motion to Strike Portions of Plaintiff's Summary Judgment Evidence. Both Motions are fully briefed and properly before the Court for review.

## II.    DEFENDANT'S MOTION TO STRIKE

On April 9, 2012, Plaintiff filed a Memorandum in Opposition to Defendant's Motion for Summary Judgment (Doc. #15) and attached three exhibits for the Court's consideration. Defendant has now moved to strike Exhibits 1 and 2. Exhibit 1 is an affidavit by Michael L. Brooks ("Mr. Brooks"), a former employee of SEFL. Exhibit 2 appears to be an unsworn letter, dated October 13, 2011, and signed by Jim Guthrie ("Mr. Guthrie"), a current employee of SEFL. In its Memorandum in Support of its Motion to Strike, Defendant contends that "[b]oth

5

the Affidavit of Brooks and the Guthrie letter should be stricken in their entirety because neither qualifies as admissible evidence under the Federal Rules of Evidence and, as such, do not comply with the procedural safeguards of Rules 56(c) and 56(e) of the Federal Rules of Civil Procedure." (Def.'s Mem. in Supp. of its Mot. to Strike [Doc. #18], at 1-2). The Court will address the admissibility of each exhibit in turn.

As it relates to Exhibit 1, Mr. Brooks' Affidavit, the Court notes that an "affidavit . . . used to . . . oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4) (formerly Fed. R. Civ. P. 56(e)); see Argo v. Blue Cross and Blue Shield of Kansas, Inc., 452 F.3d 1193, 1200 (10th Cir. 2006) (noting that "[u]nder the personal knowledge standard, an affidavit is inadmissible if the witness could not have actually perceived or observed that which he testifies to") (internal quotation marks omitted). When an "affidavit contains both inadmissible and admissible portions courts are free to strike only the inadmissible portions." Morrison v. Jordan, No. 7:08-CV-00643, 2010 WL 3783452, at *3 (W.D. Va. Sept. 28, 2010) (citing Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996) (noting that summary judgment affidavits cannot be conclusory or based upon hearsay and finding that the district court acted properly when it struck portions of the plaintiff's affidavit)).

Regarding Exhibit 1, Defendant contends that "the Affidavit of Brooks should be stricken and should not be considered because it is entirely irrelevant" because the events that led to Plaintiff's termination occurred in 2010, while Mr. Brooks' employment at SEFL ended in 2004. (Def.'s Mem. in Supp. of its Mot. to Strike [Doc. #18], at 3). In the alternative,

Defendant asserts that paragraphs 4, 5, 6, and 7 should be stricken pursuant to Federal Rule of Evidence 602, which provides that "a witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. Specifically, Defendant contends that "[Mr.] Brooks simply cannot know any of the facts nor have any personal knowledge to support the factual assertions contained in paragraphs 4, 5, 6, and 7 of his Affidavit." (Def.'s Mem. in Supp. of its Mot. to Strike [Doc. #18], at 4). In contrast, Plaintiff contends that "Mr. Brooks' observations do have relevance to the case" because "Plaintiff's evidence in general is that the discrimination against him took place over a period of many years." (Pl.'s Mem. in Opp'n to Def.'s Mot. to Strike [Doc. #19], at 2).

Turning to Mr. Brooks' Affidavit itself, the Court notes that paragraphs 1, 2 and 3 are introductory in nature and do not contain inadmissible statements. With regard to paragraph 4, the first and third sentences of that paragraph are admissible. In the first sentence of paragraph 4, Mr. Brooks states: "Mr. Hill was well known to me during the course of our mutual employment." The Court will not strike the first sentence of paragraph 4 because in that sentence Mr. Brooks is verifying the nature of his acquaintance with Mr. Hill during their mutual employment at SEFL. In the third sentence of paragraph 4, Mr. Hill states that: "There were always pressures from the employer, on the one hand, to conform to safety rules and regular procedures, but on the other hand, to get the job done quickly and to be sure to get in the minimum number of stops per hour." The third sentence is admissible testimony because Mr. Brooks appears to be speaking from his personal knowledge regarding SEFL's expectations of

7

its employees while he was employed at the company from September 1992 to April 2004. Therefore, the Court will not strike the third sentence of paragraph 4. However, in the second, fourth, fifth and sixth sentences of paragraph 4 respectively, Mr. Brooks states: that "Mr. Hill always got the job done"; that "Mr. Hill always got his freight delivered"; that "[h]e was not bringing back undelivered freight to the terminal"; and that "[h]e made his scheduled pickups." All of the aforementioned sentences contain sweeping generalizations that would require Mr. Brooks to continuously track the productivity and whereabouts of Mr. Hill to be competent to provide evidence on such matters in accordance with Rule 56(c)(4). Mr. Brooks, through his Affidavit, has failed, however, to show that he has the personal knowledge to make such broad statements of fact. Furthermore, the Court notes that Mr. Brooks could not have made any personal observations of Mr. Hill's job performance after 2004 because Mr. Brooks' employment with SEFL ended in that year. Therefore, the Court finds that Mr. Brooks lacks the requisite personal knowledge as to Mr. Hill's job performance at or around the time of Mr. Hill's termination in 2010. As such, the Court will strike the second, fourth, fifth and sixth sentences from paragraph 4.

Regarding paragraph 5 of Mr. Brooks' Affidavit, the Court notes that, in the first sentence, Mr. Brooks states: "Mr. Hill was written up by the employer unfairly and inconsistently." The Court will strike this first sentence of paragraph 5 from the record because it is conclusory in nature and not permissible evidence for the purposes of summary judgment. See Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996) (finding that summary judgment affidavits cannot be conclusory). As it relates to the remaining portion of

paragraph 5, Mr. Brooks states that: "[o]ther drivers who performed at the same level as Mr. Hill were not getting written up at all, or with the frequency that Mr. Hill was written up."  Mr. Brooks goes on to list several (former or current) employees, including himself, who he contends performed at the same level as Mr. Hill, but were not written up at all or with the same frequency as Mr. Hill.  The Court notes that in order for Mr. Brooks to determine whether or not other P&D Drivers were or were not performing at the same level of Mr. Hill, Mr. Brooks would have to have personal knowledge about the performance and disciplinary records of Mr. Hill, as well as such records for each of the individual drivers listed in paragraph 5.  Since SEFL had a specific formula for measuring the productivity of its drivers, mere observation of a driver without access to his performance record is insufficient to gain the requisite personal knowledge to provide evidence as to how the other drivers were performing in comparison to Mr. Hill.  As a co-worker, and not a human resources official, Mr. Brooks was likely not in a position to acquire such a comprehensive knowledge of the performance and disciplinary records of Mr. Hill or of the other drivers listed in paragraph 5 of his Affidavit. See Argo, 452 F.3d at 1200 (finding that as "a co-worker, and not a human resources official," the affiant "simply was not in a position to acquire [the] comprehensive knowledge" needed to determine that no female employees were terminated during his employment from failing to make monthly or yearly goals).  In any event, Mr. Brooks has not submitted any information in his Affidavit which would support a finding that his statements about other SEFL employees' performances were within his personal knowledge.  Therefore, for the purposes of summary judgment, the Court will strike the second and third sentences of paragraph 5 from the record for failing to meet the

9

personal knowledge standard of Federal Rule of Civil Procedure 56(c)(4) and Federal Rule of Evidence 602.

Additionally, in paragraph 6 of Mr. Brooks' Affidavit, he states: "Mr. Hill never complained about the job. He never refused assignments. Some other employees, such as Joe Hollifield and Joe McPherson, did refuse assignments, but there were no adverse consequences to them for refusing assignments." The Court will strike this paragraph from the record in its entirety because the first two sentences are conclusory in nature, and as it relates to the remaining portion of the paragraph, Mr. Brooks fails to submit any information in his Affidavit which would indicate that his statements regarding the other SEFL employees, which he identified, were within his personal knowledge. See Evans, 80 F.3d at 962; Fed. R. Civ. P. 56(c)(4).

In paragraph 7 of Mr. Brooks' Affidavit, he states that "[t]he employer regularly accommodated other employees who had disabilities," and that "[d]isabled truck drivers either were put to work in the office or were made supervisors." However, the Court will strike this paragraph from the record because there is no indication from Mr. Brooks' Affidavit that Mr. Brooks, as a co-worker and not a supervisor or human resources official, had personal knowledge of the facts contained therein. See Fed. R. Civ. P. 56(c)(4); Fed. R. Evid. 602. Therefore, as it relates to Exhibit 1, Mr. Brooks' Affidavit, the Court will strike only the portions of the Affidavit which the Court has determined to be inadmissible. Accordingly, the Court will strike the second, fourth, fifth and sixth sentences of paragraph 4, as well as paragraphs 5, 6, and 7 in their entirety. With respect to the sentences of Mr. Brooks' Affidavit that were not stricken,

the Court will consider them to the extent that they have relevancy to the issues to be addressed.

With regard to Exhibit 2, Mr. Guthrie's unsworn statement, the Court notes that pursuant to 28 U.S.C. § 1746, an unsworn statement is admissible at the summary judgment stage only if the witness certifies that the unsworn statement is "true under penalty of perjury." 28 U.S.C. § 1746; Network Computing Servs. Corp. v. Cisco Sys., Inc., 152 Fed. Appx. 317, 321 (4th Cir. 2005); see Moore v. Laurens Cnty., No. 6:09-CV-03083, 2011 WL 4345883, at *3 n. 3 (D.S.C. Sept. 16, 2011) (noting that "an unsworn affidavit, not accompanied by a statement affirming its authenticity, is not admissible to create an issue of fact"). In the present case, although Exhibit 2 is notarized, it does not satisfy the statutory requirement of 28 U.S.C. § 1746 because Mr. Guthrie did not certify that the unsworn statement is true under penalty of perjury. Network Computing Serv. Corp., 152 Fed. Appx. at 321 (finding that "a notary's certificate simply means that the signature is authentic," but "[i]t is not a substitute for language indicating that the witness understood he risked prosecution for perjury if he gave false testimony"). Therefore, the Court finds that Exhibit 2, Mr. Guthrie's unsworn statement, is inadmissible for the purposes of summary judgment. As such, the Court will strike Exhibit 2, in its entirety, from the record.

Therefore, with regard to Defendant's Motion to Strike, the Court will grant Defendant's request that Exhibit 2 be stricken in its entirety, but will deny Defendant's request that Exhibit 1 be stricken in its entirety. As it relates to Exhibit 1, the Court will strike only the inadmissible portions, as set forth above. Accordingly, the Court will not consider Exhibit 2 or the stricken portions of Exhibit 1 in resolving Defendant's Motion for Summary Judgment. Having made

11

that determination, the Court will now consider Defendant's Motion for Summary Judgment in light of the evidence remaining before the Court.

## III.   DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### A.   Standard of Review

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Zahodnick v. Int'l Bus. Machs. Corp., 135 F.3d 911, 913 (4th Cir. 1997).  Since the substantive law determines materiality, only facts that "might affect the outcome of the suit under the governing law" are considered material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).  The movant bears the initial burden of demonstrating "the absence of any genuine issues of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).  Once the movant has met the initial burden, the nonmoving party must "present evidence from which a jury might return a verdict in his favor." Anderson, 477 U.S. at 257, 106 S. Ct. at 2514.  When making a summary judgment determination, the court must view the evidence and all justifiable inferences from the evidence in the light most favorable to the non-moving party.  Zahodnick, 135 F.3d at 913. While all justifiable inferences are drawn in the favor of the non-movant, he "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial."  Anderson, 477 U.S. at 248, 255, 106 S. Ct. at 2510, 2513.

### B.   Plaintiff's Age Discrimination Claim

Under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621

12

*et seq.*, it is "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To prevail on an ADEA claim, a plaintiff "must prove, by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but for' cause of the challenged employer decision." Bodkin v. Town of Strasburg, Va., 386 Fed. Appx. 411, 413 (4th Cir. 2010) (quoting Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177, 129 S. Ct. 2343, 2351, 174 L. Ed. 2d 119 (2009)). ADEA claims "sought to be proved using circumstantial evidence are analyzed under the burden-shifting framework established in McDonnell Douglas Corp v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)." Bodkin, 386 Fed. Appx. at 413 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142, 120 S. Ct. 2097, 2105-06, 147 L. Ed. 2d 105 (2000)). Under that framework, Plaintiff must first establish a prima facie case of age discrimination. To do so under the ADEA, the plaintiff must show that: (1) he is a member of a protected class–that is, 40 years or older; (2) he suffered an adverse employment action; (3) he was performing his job duties at a level that met his employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or he was replaced by a substantially younger person. Id. (citing Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004)). If the plaintiff satisfies his initial burden of establishing a prima facie case of age discrimination, "the burden of production shifts to the employer to show that its decision to terminate the plaintiff is based on a legitimate, non-discriminatory reason." Duffy v. Belk, Inc., No. 11-1757, 2012 WL 1392668, at *1 (4th Cir. April 23, 2012) (citing Hill, 354 F.3d at

13

285). The "burden then shifts back to the plaintiff who must prove by a preponderance of the evidence that the reason given is a pretext for age discrimination." Id.

In the present case, Defendant concedes that Plaintiff is able to establish the first and second prongs of a prima facie case of age discrimination, namely that he is over the age of 40, being 61 years of age at the time of dismissal, and that he suffered an adverse employment action in the form of termination. As to the third prong, in order to establish that he was meeting Defendant's legitimate expectations, Plaintiff must "submit probative proof." Ploplis v. Panos Hotel Grp., 267 F. Supp. 2d 487, 493 (M.D.N.C. 2003). As long as "the requirements imposed [by the employer] are *bona fide* expectations, it is not the court's province to determine whether an employer demands too much of its workers." Cartee v. Wilbur Smith Assocs., Inc., No. 3:08-4132-JFA-PJG, 2010 WL 5059643, at *4 (D.S.C. Oct. 6, 2010) (citing Coco v. Elmwood Care, Inc., 128 F.3d 1177, 1179 (7th Cir. 1997)). However, the Fourth Circuit has indicated that in countering an employer's assertion that the job expectation prong has not been met, an employee may present evidence that demonstrates that "the proffered 'expectation' is not, in fact, legitimate at all." Warch v. Ohio Cas. Ins. Co., 435 F.3d 510, 517 (4th Cir. 2006). In this regard, "legitimate" means that "expectations cannot be a sham designed to hide the employer's discriminatory purpose." Cartee, 2010 WL 5059643, at *4 (quoting Warch, 435 F.3d at 518) (internal quotation marks omitted). In determining whether an employee was performing at a level that met the employees legitimate expectations, "it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." King v. Rumsfeld, 328 F.3d 145, 149 (4th Cir. 2003) (citing Evans, 80 F.3d at 960-61); Cartee, 2010 WL 5059643, at *4.

14

As it relates to whether he was performing at a level that met Defendant's legitimate expectations, Plaintiff contends that he was a consistently high performing employee, that the "only comprehensive employment evaluations done by [D]efendant showed that [P]laintiff was excellent and without criticism in all graded categories of performance," and that Plaintiff received an award for 25 years of good service shortly before being discharged. (Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. [Doc. #15], at 2). In addition, Plaintiff contends that he has "received many commendations and statements of appreciation from customers." (Aff. of Otis E. Hill [Doc. #15-3], at 10).

However, Defendant has provided substantial evidence in the form of written corrective actions to show that Plaintiff was not meeting SEFL's legitimate expectations at the time of Plaintiff's termination. Specifically, Defendant contends that "under SEFL's objective and uniformly-applied proprietary formula, [Mr.] Hill was consistently the lowest performing P&D Driver and was told repeatedly–verbally and through formal corrective actions–that his productivity was subpar." (Def.'s Mem. in Supp. of its Mot. for Summ. J. [Doc. #14], at 9). In response, Plaintiff challenges the accuracy of Defendant's method of conducting performance evaluations. Specifically, Plaintiff contends that all of Defendant's performance measurements are based on the "Tommy Thompson System," which "is now considerably in disrepute in the trucking industry." (Aff. of Otis E. Hill [Doc. # 15-3], at 1). According to Plaintiff, this system has been "discarded on account of inaccuracy by several motor freight carriers." (Id.) Further, Plaintiff contends that his pick-up and delivery route was not set up for him to score high numbers because he was assigned to a route that had a low mileage and he was required to work

long hours, which negatively impacted his productivity numbers. (Id. at 3-5).

In considering the parties' contentions, the Court notes that to the extent that Plaintiff contends that the Court should disregard Defendant's evidence relating to Plaintiff's low performance numbers and any corrective actions attributable to low performance because of possible inaccuracies related to the method of evaluation, the Court notes that it does not "sit as a 'super-personnel department' weighing the prudence of employment decisions." Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 272 (4th Cir. 2005) (citing DeJarnette v. Corning, Inc., 133 F.3d 293, 299 (4th Cir. 1998)). It is not the province of the Court to determine which system of performance evaluation an employer should rely on. See Duffy, 2012 WL 1392668, at *2 (quoting EEOC v. Clay Printing Co., 955 F.2d 936, 946 (4th Cir. 1992), in noting that " while summary judgment favors the nonmoving party in its interpretation of the facts, in the context of employment discrimination cases [i]t is not for this court . . . to direct the business practices of any company") (internal quotation marks omitted). Additionally, as previously noted, as long as "the requirements imposed [by the employer] are *bona fide* expectations, it is not the court's province to determine whether an employer demands too much of its workers." Cartee, 2010 WL 5059643, at *4 (citing Coco, 128 F.3d at 1179). In that regard, the Court notes that the record indicates that Defendant's system of performance evaluation was applied uniformly to all P&D Drivers employed by SEFL, and Plaintiff has failed to show that SEFL's method of evaluation was "a sham designed to hide the employer's discriminatory purpose." Warch, 435 F.3d at 518; Cartee, 2010 WL 5059643, at *4. Additionally, Defendant has submitted into evidence a copy of a corrective action which indicates that, using the same

16

system of performance evaluation, Plaintiff scored a satisfactory three-day performance average of 116 during check rides, but only scored an unsatisfactory performance average of 102 during the two months following the check rides conducted by SEFL personnel. (Dep. of Otis E. Hill [Doc. #13-1], Ex. 3, at 5).

In addition, aside from the numbers associated with the performance evaluation system, Plaintiff also received corrective actions for other violations of SEFL policies, including, failing to take his hand truck and load lock with him during runs, failing to fuel his tractor, failing to leave equipment in the proper location, and making an incorrect delivery. To the extent that Plaintiff contends that other employees made the same mistakes, but were not disciplined, Plaintiff has failed to provide the names, ages and positions of such employees thereby prohibiting the Court from making any determination as to whether the alleged disparate treatment is probative of age discrimination, as Plaintiff appears to contend.

Furthermore, to the extent that Plaintiff relies on his own opinion regarding his performance and statements from co-workers or customers to show that he was meeting SEFL's legitimate expectations, the Court reiterates that it is the "perception of the decision maker which is relevant." King, 328 F.3d at 149 (finding that the self-assessment of the plaintiff is not relevant); Cartee, 2010 WL 5059643, at *4. Plaintiff's opinions, as well as those of his co-workers or customers do not constitute probative evidence that Plaintiff was meeting his employer's job expectations. Ploplis, 267 F. Supp. 2d at 493 (citing King, 328 F.3d at 149-50, in finding that the plaintiff's own opinion and that of her co-workers does not "constitute probative proof that plaintiff was meeting her employer's job expectations"). It is therefore the

17

finding of the Court that Plaintiff cannot establish the third prong of a prima facie case of age discrimination, namely that he was performing at a level that met SEFL's legitimate expectations.

Moreover, even if Plaintiff could show that he was performing his duties at a level that met Defendant's legitimate expectations, Plaintiff has failed to present any evidence that would establish the fourth prong of a prima facie case of age discrimination, namely that his pick-up and delivery position remained open or that he was replaced by a substantially younger person. Instead, Plaintiff contends that "[t]here is no indication that his position of employment did not remain open, or that his duties did not devolve upon some other employee, since he served a Greensboro pickup and delivery route of key customers." (Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. [Doc. #15], at 8). As previously noted above, Plaintiff bears the burden of establishing every prong of a prima facie case of age discrimination. Mere speculation will not suffice to establish the fourth prong of a prima facie case. Therefore, having failed to establish the fourth prong of a prima facie case, Plaintiff's age discrimination claim fails as a matter of law.[1] Summary judgment as to Plaintiff's age discrimination claim is therefore appropriate.

---

[1] The Court notes that even if Plaintiff could establish a prima facie case of age discrimination, Plaintiff has failed to present evidence sufficient for a reasonable jury to find that Defendant's nondiscriminatory reason for his termination, namely that his job performance was unsatisfactory, is a pretext for age discrimination. This is so especially in light of the fact that approximately a year prior to Plaintiff's termination, after his refusal of the linehaul position, SEFL had taken a similar course of action with another significantly younger employee, Michael Flynn, age 39, who SEFL determined was not productive as a P&D Driver. (Dep. of Marty Coleman [Doc. #13-3], at 4). Michael Flynn was offered a linehaul position when SEFL determined that he was not meeting its productivity expectations as a P&D Driver. (Id.). Furthermore, Plaintiff's own testimony at his deposition indicates that his termination was based on age-neutral factors since Plaintiff admitted that he believed that if his performance numbers were higher, he would probably still be employed at SEFL. (Dep. of Otis E. Hill [Doc. #13-1], at 139).

C.    Plaintiff's Disability Discrimination Claim

Under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, covered entities, including private employers, are prohibited from discriminating against "qualified individuals on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).  In the present case, Plaintiff posits two theories of recovery under the ADA, namely, (1) discriminatory treatment in the form of wrongful discharge, and (2) discriminatory failure to accommodate. (Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. [Doc. #15], at 9).  Under the ADA, Plaintiff's claims for wrongful discharge and failure to accommodate "both require a showing that [he] was 'disabled' within the meaning of the ADA."  Rhoads v. Fed. Deposit Ins. Corp., 257 F.3d 373, 387 (4th Cir. 2001).  Therefore, prior to addressing each claim individually, the Court will determine whether Plaintiff can show that he was a qualified individual with a "disability" within the meaning of the ADA.

a.    Disability Within the Meaning of the ADA

Under the ADA, a disability is defined as either: (A) a physical or mental impairment that substantially limits one or more major life activities; (B) a record of such an impairment; or (C) being regarded as having such an impairment. 42 U.S.C. §12102(1); Rohan v. Networks Presentations LLC, 375 F.3d 266, 273 (4th Cir. 2004).  A physical impairment means "any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more . . . body systems" including, *inter alia*, the special sense organs.  29 C.F.R. § 1630.2(h)(1).

19

The "determination of whether a person is disabled is an individualized inquiry, particular to the facts of each case." EEOC v. Sara Lee Corp., 237 F.3d 349, 352 (4th Cir. 2001). EEOC regulations indicate that "[a]n impairment is a disability within the meaning [of the ADA] if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii). Although an impairment "need not prevent, or significantly or severely restrict, the individual from performing a major life activity . . . not every impairment will constitute a disability" within the meaning of the ADA. 29 C.F.R §1630.2(j)(1)(ii). Major life activities include working and seeing. 29 C.F.R. § 1630.2(i)(1)(i). In the present case, Plaintiff appears to contend that he is disabled because he has glaucoma. However, in order to establish that Plaintiff is disabled within the meaning of the ADA, Plaintiff must show that he is substantially limited in a major life activity, such as working or seeing. 29 CFR §1630.2 (j)(1)(ii); see Wyatt v. Maryland Inst., No. RDB-10-2584, 2012 U.S. Dist. LEXIS 30465, at *12-13 (D. Md. March 7, 2012).

i.      Major Life Activity of Working

Plaintiff appears to contend that he was substantially limited in the major life activity of working because he was unable to perform the linehaul position that he was offered by Defendant in lieu of termination due to the fact that his glaucoma prevented him from driving for extended periods of time at night, as required for that position. However, in order to show that he was substantially limited in the major life activity of working, Plaintiff must show that he was precluded from a substantial class of jobs or a broad range or jobs on account of his eye condition. Taylor v. Federal Express Corp., 429 F.3d 461, 464 (4th Cir. 2005) (finding that to

20

"be substantially limited in the major life activity of working . . . one must be precluded from more than one type of job, a specialized job, or a particular job of choice . . . [and] if jobs utilizing an individual's skills . . . are available, one is not precluded from a substantial class of jobs"); Allen v. SouthCrest Hosp., 455 Fed. Appx. 827, 835 (10th Cir. 2011) (finding that the plaintiff, "even after the enactment of the [ADA Amendments Act of 2008] and the modified EEOC regulations" must show that she was "substantially limited in performing a class of jobs or broad range of jobs" in order to establish that she is substantially limited in the major life activity of working). In the present case, Plaintiff has failed to show that he is precluded from performing a substantial class of jobs or a broad range of jobs on account of his eye condition. Although Plaintiff could not perform the linehaul position because it was inadvisable for him to drive for extended periods of time during the night, as required for that position, Plaintiff was capable of performing a broad range of driving positions. In fact, Plaintiff testified in his deposition that his eye condition did not affect his ability to perform his previous position as a P&D Driver. (Dep. of Otis E. Hill [Doc. #13-1], at 117). As such, the Court finds that Plaintiff was not substantially limited in the major life activity of working because of any difficulty with being able to see.

ii.     Major Life Activity of Seeing

To the extent that Plaintiff contends that he was substantially limited in the major life activity of seeing, the Court notes that "[a]mong the factors courts consider in making the substantial limitation determination are the impairment's nature and severity and expected duration." Heiko v. Colombo Savings Bank, 434 F.3d 249, 257 (4th Cir. 2006) (internal

quotation marks omitted). Additionally, as previously noted above, EEOC regulations indicate that "[a]n impairment is a disability within the meaning [of the ADA] if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii). In addition, the Fourth Circuit has previously indicated that considering whether an individual has a driver's license and whether an individual is able to read are appropriate considerations when determining if the individual is substantially limited in the major life activity of seeing. Foore v. City of Richmond,Va., 6 Fed. Appx. 148, 152 (4th Cir. 2001) (finding that although the plaintiff had monocular vision, the plaintiff compensated for his monocular vision and was not substantially limited in the major life activity of seeing, which was evidenced by the fact that he had a full range of peripheral vision, he could read, and he had a driver's license); see Wyatt, 2012 U.S. Dist. LEXIS 30465, at *21-22 (finding that the plaintiff's glaucoma did not substantially limit his major life activity of seeing because he has the use of both of his eyes, continues to drive during the day and at night, is able to read and write, is able to use the computer after altering its font-size settings and continues to care for himself in terms of his seeing ability to the same extent as an average person in the general population).

In making an individualized determination in the present case, the Court notes that the only medical evidence presented regarding Plaintiff's eye condition are two doctors' notes. One note, from an ophthalmologist, Dr. Robert L. Groat, indicated that Plaintiff's eye conditions made "it difficult to see at night" and that "it would be beneficial for him not to drive after dark." (Dep. of Otis E. Hill [Doc. #13-1], Ex. 5). The Court notes that in his statement, Dr. Groat does not indicate that Plaintiff is precluded from driving at night, but instead indicates

that it would be "beneficial" for Plaintiff not to drive after dark. The second note, based on the evidence presented, appears to be from a family practitioner, Dr. David C. Keller. Dr. Keller indicated that Mr. Hill was "unable to drive at night due to an eye problem." (Id., Ex. 6). However, Dr. Keller's note does not provide any specifics regarding Plaintiff's actual visual acuity, whether during the daytime or at night. The Court notes that Plaintiff testified in his deposition that he is able to drive with glasses and that he is able to read without glasses. (Dep. of Otis E. Hill [Doc. #13-1], at 117). Plaintiff also testified that while working as a P&D Driver, his eye condition did not affect his ability to drive and that he would occasionally drive back to the service center after dark. (Id. at 112-13). Plaintiff also testified that his doctors did not advise him that he could not drive during the night at all, but that he could not drive "all night long." (Id. at 113). Additionally, Plaintiff testified that his glaucoma does not affect his ability to do yard work or housework, and there is no indication from the record that Plaintiff's eye condition prevents him from caring for himself. (Id. at 117-18). In summary, based on Plaintiff's own testimony at his deposition, Plaintiff's eye condition does not prevent him from driving during the day, driving for short distances at night, reading, doing yard work, doing housework, or caring for himself to the same extent as an average person in the general population. It is therefore the finding of the Court that Plaintiff is not substantially limited in the major life activity of seeing "as compared to most people in the general population." 29 C.F.R. 1630.2(j)(1)(ii).

Therefore, to the extent that Plaintiff has failed to show that he is substantially limited in a major life activity, he cannot show that he is disabled within the meaning of the ADA.

Based on the foregoing, the Court finds that summary judgment would be appropriate on both of Plaintiff's disability discrimination claims because Plaintiff has failed to establish that he is disabled within the meaning of the ADA. However, although the Court perhaps could end its analysis of Plaintiff's disability discrimination claims at this point, the Court will nonetheless address the remaining elements of Plaintiff's disability discrimination claims, beginning with his wrongful discharge claim, and thereafter addressing Plaintiff's failure to accommodate claim.

      b.    Wrongful Discharge under the ADA

To establish a prima facie case of wrongful discharge under the ADA, Plaintiff must show that (1) he is within the ADA's protected class–that is, that he was disabled within the meaning of the Act; (2) he was discharged; (3) at the time of his discharge, he was performing the job at a level that met his employer's legitimate expectations; and (4) his discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination. <u>Haulbrook v. Michelin N. Am.</u>, 252 F.3d 696, 702 (4th Cir. 2001). Assuming, arguendo, that Plaintiff could establish that he was disabled within the meaning of the Act, Plaintiff's wrongful discharge claim fails at the third prong of the analysis, which requires him to show that he was performing at a level that met his employer's legitimate expectations. As discussed in detail above in relation to his age discrimination claim, Plaintiff cannot show that he was performing his job at a level that met his employer's legitimate expectations in light of the corrective actions that Plaintiff received, which detailed his unsatisfactory performance. Although Plaintiff contends that he was performing at a high level and attempts to highlight possible inaccuracies in Defendant's system of performance evaluation, Plaintiff has failed to present any probative evidence that he was, in

24

fact, performing at a level that met his employer's legitimate expectations. Therefore, Plaintiff fails to establish the third prong of a prima facie case of wrongful discharge under the ADA.

Further still, even if Plaintiff could establish that he was disabled within the meaning of the Act and that he was performing at a level that met SEFL's legitimate expectations, he has failed to establish the fourth prong of a prima facie case, that is, that his discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination. While Plaintiff appears to contend that he was terminated only after he revealed that he could not perform the linehaul position because of his glaucoma, Plaintiff testified in his deposition that he had already been suspended from his actual position as a P&D Driver and that Defendant had offered him the linehaul position only as an alternative to resignation. (Dep. of Otis E. Hill, [Doc. 13-1], at 104, 110). The Court notes that at the time that Defendant made Plaintiff the offer of the linehaul position in lieu of what was essentially termination, Defendant was not aware of Plaintiff's glaucoma. (Dep. of Marty Coleman [Doc. #13-3], at 5). Furthermore, after being notified about Plaintiff's glaucoma and his inability to perform an essential function of the linehaul position, namely, night driving, Defendant checked to see if there were any other open positions for which Plaintiff qualified. (Id. at 4). Upon conducting a review, Defendant determined that there were no open positions for which Plaintiff qualified, excluding the P&D Driver position from which Plaintiff was already suspended, and from which Defendant had already determined that Plaintiff would not be returning. (Id. at 4-5). While Plaintiff contends that he merely wanted his old P&D Driver position back, Defendant was not required to reinstate Plaintiff to his prior position as a P&D Driver after he had been previously suspended

for unsatisfactory performance in that position. Additionally, although Plaintiff contends that there were open dock worker positions, Plaintiff fails to provide any evidence, aside from his own statements, to substantiate his contention. Finding no available positions for which Plaintiff qualified, Defendant terminated Plaintiff's employment. (Id.). As such, the series of events leading up to Plaintiff's termination do not raise a reasonable inference of discrimination on the basis of disability. Therefore, having failed to establish the first, third, and fourth prongs of a prima facie case of wrongful discharge under the ADA, Plaintiff's wrongful discharge claim fails as a matter of law. Summary judgment is therefore appropriate on Plaintiff's wrongful discharge claim as well.

c.     Failure to Accommodate under the ADA

In order to establish a prima facie case of a failure to accommodate under the ADA, Plaintiff must show: (1) that he was an individual who had a disability within the meaning of the Act; (2) that the employer had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position; and (4) that the employer refused to make such accommodations. Rhoads, 257 F.3d at 387 n.11. Assuming, arguendo, that Plaintiff could establish that he was disabled within the meaning of the Act, Plaintiff's failure to accommodate claim fails at the third prong of the analysis, which requires him to show that with reasonable accommodation he could perform the essential functions of the position at issue. The parties agree that an essential function of the linehaul position offered to Plaintiff is nighttime driving. (Dep. of Otis E. Hill [Doc. #13-1], at 124-25; Decl. of Marty Coleman [Doc. #13-3], at 4). Plaintiff, on the advice of his ophthalmologist, declined the linehaul position

26

because it was not advisable for Plaintiff to drive for extended periods of time during the night due to his glaucoma, as required for the linehaul position. (Dep. of Otis E. Hill [Doc. #13-1], at 111-12, 121). Defendant was not required to accommodate Plaintiff by allowing him to perform the linehaul position during the daytime because nighttime driving is an essential function of the position and Defendant was not required to exempt Plaintiff from an essential function of the position in order to accommodate him. Brickers v. Cleveland Bd. of Educ., 145 F.3d 846, 850 (6th Cir. 1998)(finding that "[t]he ADA does not demand that an employer exempt a disabled employee from an essential function of the job as an accommodation"); see Clement v. Bojangles' Rest. Inc., No. 1:99CV1010, 2001 WL 66317, at *4 (M.D.N.C. Jan. 4, 2001) (finding that exempting the plaintiff from performing many of his essential functions was clearly not reasonable, and thus was not required by the ADA). Therefore, Plaintiff fails to establish the third prong of a prima facie case of a failure to accommodate because he fails to show that he could perform the essential functions of the linehaul position with reasonable accommodation.

In regard to the fourth prong of a prima facie case of a failure to accommodate, Plaintiff cannot show that SEFL refused to make a reasonable accommodation because such accommodation was not available in light of the facts in this case. Therefore, since Plaintiff has failed to establish the first, third and fourth prongs of a prima facie case of a failure to accommodate, the Court finds that summary judgment is appropriate on Plaintiff's failure to accommodate claim as well.

IV.    CONCLUSION

For all the reasons set forth above, Defendant's Motion to Strike Portions of Plaintiff's Summary Judgment Evidence [Doc. #17] will be GRANTED IN PART and DENIED IN PART, as set forth herein.  In addition, for all the reasons set forth above, Defendant's Motion for Summary Judgment [Doc. #13] will be GRANTED.  As such, this case will be DISMISSED with prejudice.

An Order and Judgment consistent with this Memorandum Opinion will be entered contemporaneously herewith.

This, the 2nd day of July, 2012.


United States District Judge